IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GENETIC VETERINARY SCIENCES, INC.,
d/b/a Paw Prints Genetics,

    Plaintiff,

v.

Civil Action No. 2:17cv108

LABOKLIN GMBH & CO. KG &
THE UNIVERSITY OF BERN,

    Defendants.

## OPINION & ORDER

This matter is before the Court pursuant to Defendants LABOklin GmbH & Co., KG's, ("LABOklin's") and The University of Bern's (the "University's") (collectively, "Defendants'") Motion to Dismiss Plaintiff Genetic Veterinary Sciences, Inc. d/b/a Paw Prints Genetics's ("PPG's" or "Plaintiff's") Complaint ("Motion"). Doc. 29. For the reasons stated below, the Court **DENIED** the Motion.

### I.    BACKGROUND

#### A.    Factual Allegations

This action arises from a patent regarding genotyping labrador retrievers. See Doc. 1 ("Compl."), ¶¶ 9–11. PPG is a Washington corporation with its headquarters in Spokane, WA. Id. ¶ 2. It tests for genetic variations and mutations known to cause diseases in dogs. Id. ¶ 18. The test at issue detects the presence of a mutation in the SUV39H2 gene that causes Hereditary Nasal Parakeratosis ("HNPK"). See id. ¶¶ 9–11, 18–20. HNPK is a disease that involves "development of crusts and fissures of the nasal planum at a young age." Id. ¶ 10.

LABOklin sent PPG a cease-and-desist letter accusing it of infringing U.S. Patent No. 9,157,114 (the "'114 patent"). Id. ¶ 19. LABOklin is a German company based in Bad Kissingen, Germany, that holds an exclusive license to the '114 patent. Id. ¶¶ 3, 17. The owner of the '114 patent, the University, is an agency or instrumentality of Switzerland. Id. ¶ 4, 7. PPG alleges "[o]n information and belief" that the University authorized LABOklin to send the letter. Id. ¶ 20.

PPG seeks a declaratory judgment that the '114 patent is invalid. Id. ¶¶ 24–27.

## B. Procedural History

PPG filed its Complaint on February 22, 2017. Doc. 1. On May 8, 2017, the Court GRANTED Defendants an extension of time to respond to the Complaint. Doc. 21. Defendants filed the instant Motion to Dismiss on June 1, 2017. Doc. 29. PPG responded on June 16, 2017. Doc. 38. Defendants replied on June 21, 2017. Doc. 48.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a claim against a defendant for lack of subject matter jurisdiction. Federal district courts are courts of limited subject matter jurisdiction. Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)). Accordingly, "[t]he objection that a federal court lacks subject-matter jurisdiction. . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation. . . ." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)). The court may accept evidence on any disputed jurisdictional facts without converting a motion to dismiss into a motion for summary judgment. See Richmond, Fredericksburg &

Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).[1] The plaintiff has the burden of proof on subject matter jurisdiction. Id.

**B.     Rule 12(b)(2)**

Under Federal Rule of Civil Procedure 12(b)(2), a court may dismiss a defendant from an action for lack of personal jurisdiction. When the court addresses personal jurisdiction on the basis of the complaint and the motion papers, it "must resolve all factual disputes in the plaintiff's favor." Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002)).[2] If the complaint and motion papers are inadequate to determine whether personal jurisdiction exists, the court should "take all necessary action" to supplement the record with evidence necessary to make that determination. Trintec Indus., Inc. v. Pedre Promotional Prod., Inc., 395 F.3d 1275, 1283 (Fed. Cir. 2005).

### III.     ANALYSIS

Defendants seek dismissal of this case on three grounds: that the Court lacks personal jurisdiction over LABOklin, that the Court lacks subject matter jurisdiction over the University, and that the University is immune from suit. Doc. 30 at 3–21. In addition, Defendants argue that if the Court dismisses only one of them, it must also dismiss the case for failure to join all necessary and indispensable parties. Id. at 21–27.

**A.     Personal Jurisdiction over LABOklin: Patent Long Arm Statute and Rule 4(k)(2)**

LABOklin argues that is it not subject to personal jurisdiction in this Court because it is not a patentee for purposes of 35 U.S.C. § 293 (the "patent long arm statute") and because it is

---

[1] The Federal Circuit applies regional circuit law on the issue of subject matter jurisdiction. See Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1380 (Fed. Cir. 2002) (citations omitted).
[2] The Federal Circuit applies its own law on personal jurisdiction over out-of-state patentees. See Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1269 (Fed. Cir. 1998).

not otherwise subject to personal jurisdiction in Virginia. Id. at 3–11. PPG responds that LABOklin is an assignee of the patent, qualifying it as a patentee for purposes of the patent long arm statute, and that LABOklin subjected itself to jurisdiction under Fed. R. Civ. P. 4(k)(2) by waiving service. Doc. 38 at 6–9. LABOklin replies by defending that it is a licensee, not an assignee, and observing that Rule 4(k)(2) requires satisfaction of due process, which PPG cannot demonstrate on the facts of this case. Doc. 48 at 5–7.

The patent long arm statute provides as follows:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the Eastern District of Virginia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293 (2017). The term "patentee" includes successors in title. See id. § 100(d). "If the patentee has transferred all substantial rights in the patent to an exclusive licensee. . . the licensee is treated as the assignee." See Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1342 (Fed. Cir. 2011).

An important consideration in assessing whether the patentee has transferred all substantial rights is determining whether the licensee has the right to enforce the patent and whether the patentee divested itself of that right. See id. (citing Alfred E. Mann Found. for Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1361 (Fed. Cir. 2010); Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 875 (Fed. Cir. 1991)). A license provision that permits the patentee to grant enforcement rights in particular instances at a later time does not convey all substantial rights. See id. In addition, conveyances of

4

enforcement rights that are not in writing generally do not function as assignments. See Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998); see also Vapor Point LLC v. Moorhead, 832 F.3d 1343, 1351–52 (Fed. Cir. 2016) (acknowledging limited exceptions to the holding in Enzo, such as transfer by operation of law).

It appears from the agreement between Defendants that LABOklin is a licensee. LABOklin cannot send a cease and desist letter without the consent of the University. See Doc. 38, Ex. A ("Cumby Decl."), Ex. A ("License Agmt.") § 5.2(a). LABOklin also cannot initiate litigation unless it notifies the University of infringing activity, the activity does not abate for ninety (90) days, and the University decides not to commence its own suit but instead to empower LABOklin to sue. Id. § 5.2(b). PPG observes that this case is factually distinguishable from Federal Circuit precedent on point because the University is obligated to give the right to sue to LABOklin if it does not pursue legal action itself. Doc. 38 at 5. This argument is incorrect, as Alfred E. Mann is very close to the facts at hand. See 604 F.3d at 1361. In Alfred E. Mann, the licensee had the first right of refusal on litigation, but if it chose not to file suit, than the original patentee had the right to sue. See id. The Federal Circuit found that the patentee's reservation of a right to sue meant that the licensing agreement was not a virtual assignment. See id. at 1363. The facts in this case weigh more strongly in favor of finding that the agreement is not an assignment because the University retained the first right to sue, not just some right to sue. See License Agmt. § 5.2(b).

PPG also argues that the agreement is not restricted by its alleged field of use and that the agreement treats LABOklin as an assignee by granting extensive powers, such as an unfettered ability to sublicense. The Court need not consider those provisions unless they render the right to sue illusory. The agreement appears to require royalties for sublicenses, see id.

5

§ 2.2(a), and requires University consent for any other form of sublicense, see id. § 2.2(b). Such sublicensing powers do not render the University's right to sue illusory because they require royalties. See Alfred E. Mann, 604 F.3d at 1362. Thus, the right to sue resolves this inquiry, and the Court need not address the allocation of powers further. Thus, the Court **FINDS** that LABOklin is a licensee, not an assignee, of the patent. Accordingly, LABOklin is not a patentee or a successor in interest reachable by the patent long arm statute.

PPG's other argument for personal jurisdiction requires application of Rule 4(k)(2). Doc. 38 at 8–9. That rule provides as follows:

> **(2) Federal Claim Outside State-Court Jurisdiction.** For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). This provision allows a court to exercise personal jurisdiction if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009).

The Court ORDERED an evidentiary hearing because it lacked sufficient facts from the briefs to determine whether LABOklin's contacts with the United States satisfy the due process inquiry. Neither Party disputes that this claim arises under federal law or that LABOklin is not subject to personal jurisdiction in any state's courts. See generally Docs. 30, 38, 48. The dispositive inquiry then is whether the exercise of personal jurisdiction here comports with due process. See Synthes, 563 F.3d 1285 at 1296.

Under the due process analysis, the Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has "purposefully directed" his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), and that the alleged injuries "arise out of or relate to" those activities. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). The Federal Circuit describes this as a three factor test, "which considers whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." Synthes, 563 F.3d 1285 at 1297. If the cause of action does not arise out of or relate to the defendant's contacts with the forum, the plaintiff must demonstrate that the defendant's contacts with the forum are "continuous and systematic" so as to support the exercise of general personal jurisdiction. Helicopteros, 466 U.S. at 415–16.

PPG does not specify whether it believes general or specific jurisdiction is appropriate on these facts, only arguing broadly that jurisdiction is appropriate. See Doc. 38 at 8–9. Under Rule 4(k)(2), due process analysis assesses "a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Synthes, 563 F.3d 1285 at 1295. Despite that broad standard, the exercise of personal jurisdiction is not consistent with due process where the defendant's only contact with the forum is cease-and-desist letters. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360–61 (Fed. Cir. 1998). The rationale in Red Wing Shoe is that such a letter satisfies minimum contacts but "cannot satisfy the [fairness] prong of the Due Process inquiry." 148 F.3d at 1360–61. Thus, the minimum contacts factors are easily satisfied in this case, and the third prong is the key issue.

On the fairness prong, PPG argues that LABOklin is obligated to effect commercial sales in North America and that the obligation likely led to sufficient contacts for jurisdiction. See Doc. 38 at 8 (citing License Agmt. § 3.3(a)). In its briefs, LABOklin does not explicitly deny any sales in the United States, instead generally denying any activity that would support personal jurisdiction, see Doc. 30 at 11, and also denying any other enforcement activity in the United States, see id., Ex. B ("Müller Decl.") ¶¶ 10–14. At the hearing on the instant matter, LABOklin's counsel represented that it has two (2) sublicensees in the United States, one (1) in California, and one (1) in Ann Arbor, Michigan. Thus, it appears that LABOklin has "other activities" in addition to the cease-and-desist letter to PPG in order to satisfy the fairness test.

Whether LABOklin's sublicenses combined with the enforcement letter are sufficient to confer personal jurisdiction is unclear in current case law. "While exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of 'other activities' that support specific personal jurisdiction in a declaratory judgment action, the defendant patentee's own commercialization activity does not." Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1019 (Fed. Cir. 2009) (quoting Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1335 (Fed. Cir. 2008)). That rule quoted out of context sounds like an immunity rule allowing a company like LABOklin to purposefully avail itself of the United States market while avoiding the jurisdiction of United States courts. The reason that the rule is not an immunity rule is because it discusses patentees, not licensees, and is written under the presumption that a patentee is always subject to jurisdiction in some District. See id. at 1021 (citing 35 U.S.C. § 293, which currently subjects patentees to jurisdiction in the Eastern District of Virginia). Thus, the effect of the rule is to subject commercializing entities to jurisdiction only in this District, even when sending a few

8

cease-and-desist letters, while requiring enforcing entities to answer for their activity in other relevant forums in the United States.

The Court **FOUND** that entering sublicenses in the United States under the authority of an exclusive licensing agreement with enforcement obligations is sufficient activity for specific personal jurisdiction over an exclusive licensee in this District. The commercial activity alone may be enough activity to subject LABOklin to specific personal jurisdiction because the Federal Circuit does not want to immunize companies monetizing United States patents in the United States from any jurisdiction in the United States. Cf. Autogenomics, 566 F.3d at 1021. Nevertheless, the particular facts of this case also support jurisdiction because of LABOklin's enforcement obligations. See id. at 1019; see also New World Int'l, Inc. v. Ford Glob. Techs., LLC, 859 F.3d 1032, 1038 (Fed. Cir. 2017). When an exclusive licensee within the United States has a license wherein the patent owner cooperates in enforcement efforts, that license is sufficient to subject the patent owner to jurisdiction. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1367 (Fed. Cir. 2006). Here, LABOklin is not merely a remote patentee assisting a U.S. company with enforcement, but instead, it is the U.S. enforcer. Its license agreement obligates it to effect commercialization within the U.S., to inform the University of any infringement, and to work cooperatively with the University to end the infringement. See License Agmt. § 3.3(a); 5.2(a)–(d). The fact that it is a foreign licensee does not change the analysis because it is acting like the U.S. licensee in cases like Breckinridge, pursuing commercial opportunities and enforcement obligations. Thus, the Court **FOUND** specific personal jurisdiction over LABOklin.

B.  **Subject Matter Jurisdiction over the University: Case or Controversy**

The University argues that it has no case or controversy with PPG because it has not taken any affirmative action against PPG. Doc. 30 at 18–21. The Declaratory Judgment Act gives the federal courts power "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Supreme Court precedent requires that such actions be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)). The Federal Circuit has further states that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party," that other party may seek declaratory relief without waiting for an infringement suit. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

PPG alleges "[o]n information and belief [that] The University of Bern authorized LABOklin to send a cease and desist letter to PPG identifying the '114 Patent and accusing PPG of activities that infringe the '114 Patent." Compl. ¶ 20. In their briefs, Defendants both agree with and dispute this allegation, depending on which position is more useful for their arguments. Compare Doc. 30 at 17 with id. at 20. For subject matter jurisdiction, Defendants argue that the University "consented" by declining to take any action, which authorizes LABOklin to file suit under § 5.2(b) of their agreement. See id. at 20. Separately, under its personal jurisdiction argument, Defendants argue that the University's "consent" was not in any form that would

authorize LABOklin to file suit. See id. at 17. The latter description is more consistent with the licensing agreement, which treats consent to sending cease-and-desist letters as a separate action from declining to sue. Compare License Agmt. § 5.2(a) with id. § 5.2(b). At the hearing, the University's counsel acknowledged that the University affirmatively consented to sending the letter. Thus, the Court **FOUND** that the University has a case or controversy with PPG because it authorized threatening PPG for violating its patent.

None of the Defendants' authority supports its argument that a proxy threat is not actionable. In Keranos, LLC v. Analog Devices, Inc., the patentee had assigned its interest in the patent to its licensee, and that assignment prevented any finding of adverse interests between the patentee and the alleged infringer. No. 2:10cv207, 2012 WL 12716356, at *2 (E.D. Tex. Sept. 28, 2012) (citing King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1281–83 (Fed. Cir. 2010); Trend Micro Corp. v. Whitecell Software, Inc., No. 10cv2248, 2010 WL 4722504, at *3 (N.D. Cal. Nov. 15, 2010)). The patentee's encouragement of an infringement suit was no basis for declaratory judgment because the patentee no longer had an interest in the outcome of the case. See id. Here, Defendants have contested jurisdiction over LABOklin because the University retained substantial rights in the patent. Doc. 30 at 3–11. The University is in a materially different position than the patentee in Keranos because it has not assigned its patent and maintains a legal interest in stopping infringing activities. Intervet, Inc. v. Merial Ltd. is even farther removed from these facts because it involved a plaintiff that "[did] not quarrel with the proposition that the [patentees] have not threatened them with infringement." No. 06cv658, 2007 WL 840490, at *2 (D.D.C. Mar. 19, 2007), report and recommendation adopted, No. 06cv658, 2007 WL 1018459 (D.D.C. Mar. 30, 2007). PPG's Complaint demonstrates that it

clearly quarrels with any such proposition in this case. Compl. ¶ 20. Thus, Defendants' cases are entirely distinguishable from the present case.

Defendants also argue alternatively that this suit is not based on the University's affirmative consent because such consent did not obligate LABOklin to send a cease-and-desist letter, and the sending of the letter was an intervening act. Doc. 48 at 10. On that basis, they argue that LABOklin's actions were entirely voluntary. See id. While a licensor is not imputed with the unilateral acts of a licensee, it may be imputed with acts it controls under agency theory. See Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1379 (Fed. Cir. 2015) (citations omitted). This argument that LABOklin alone is responsible for the letter is unpersuasive because it defies credulity that a patentee approved a threat against a specific company with no expectation of that threat occurring. The patent long arm statute may intend to let patentees evade jurisdiction where their licensee acted of its own accord, but it does not intend to let patentees evade jurisdiction by having their licensee act on their behalf. Thus, the Court **FOUND** that this suit is based on the University's act of authorizing sending a cease-and-desist letter to PPG.

### C.  Personal Jurisdiction over the University: Sovereign Immunity

The University claims sovereign immunity from suit as an agency or instrumentality of Switzerland. Doc. 12 at 17. Under the Foreign Sovereign Immunities Act ("FSIA), an agency or instrumentality of a foreign state is generally immune from suit, subject to a few exceptions. See 28 U.S.C. §§ 1603(a), 1604. One exception allows claims against a foreign state that engages in commercial activity. 28 U.S.C. § 1605(a)(2). That section provides that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the

> United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. . . .

Id. Acts are commercial if they "are the type of actions by which a private party engages in trade and traffic or commerce. . . ." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (emphasis in original) (internal citations and quotation marks omitted); see also 28 U.S.C. § 1603(d) ("The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."). The Federal Circuit has stated that a defendant's "acts of (1) obtaining a United States patent and then (2) enforcing its patent so it could reap the profits thereof—whether by threatening litigation or by proffering licenses to putative infringers—certainly" are commercial activity. Intel Corp. v. Commonwealth Sci. & Indus. Research Organisation, 455 F.3d 1364, 1370 (Fed. Cir. 2006) (en banc).

This analysis is similar to the subject matter jurisdiction analysis. The University's proxy threat against PPG qualifies as activity enforcing a patent in the United States. Threatening infringement litigation is undoubtedly commercial activity. See id. Defendants factually distinguish Intel Corp. because that case concerned licensing negotiations, not threatened litigation. Doc. 48 at 9. The factual distinction is true, but it disregards the rule stated by the Federal Circuit: obtaining a patent and then acting to enforce that patent qualifies as commercial activity. Intel Corp., 455 F.3d at 1370. That rule applies equally to these facts, where the University obtained a patent and then threatened PPG by proxy with litigation. While the facts of that case do not reach the full extent of the rule that the Federal Circuit stated, Intel Corp. is persuasive that any patent enforcement activity is the type of activity by which a private party engaged in commerce.

The University alternatively argues that only a claim of non-infringement, not a claim of invalidity, would be based on the letter. Doc. 48 at 9. This argument is simply wrong because when a party is accused of infringing a patent and believes it does infringe the patent at issue, the only possible declaratory claim based on such an accusation is a finding of invalidity. After the briefing on this Motion but in advance of the hearing, the Parties stipulated that PPG infringed Claims 1–3 of the '114 patent. See Doc. 63 ¶ 2. This stipulation confirms that PPG's only possible claim based on the University's act was patent invalidity.

The University finally argues that it cannot be imputed with the letter because sending the letter is the act of a separate entity. Doc. 48 at 9–10. This argument begs the question of whether the University was party to the cease-and-desist letter or merely an inactive bystander to the threat. The fact that the consent to the letter occurred outside the United States is no barrier to applying the commercial activity exception here because the exception includes "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere...." 28 U.S.C. § 1605(a)(2). Furthermore, the Court **FOUND** that the University's affirmative consent had a direct effect in the United States by causing the sending of the cease-and-desist letter. Accordingly, the Court **FOUND** that the commercial activity exception to sovereign immunity applies in this case and that the Court has jurisdiction over the University.[3]

## IV. CONCLUSION

For the reasons stated above, the Court **FINDS** jurisdiction over both Defendants and **DENIES** the instant Motion, Doc. 29. The Court also recognizes that the University has the

---

[3] All Parties alternatively argue about whether the University engaged in commercial activity by licensing the patent to LABOklin and whether such activity is the basis for the claims in the instant case. Doc. 30 at 14–18; Doc. 38 at 13–15; Doc. 48 at 8–10. The Court does not need to reach this alternative issue because its findings resolve the instant Motion.

14

right to an immediate interlocutory appeal regarding the denial of sovereign immunity should it desire to make such an appeal. See Intel Corp., 455 F.3d at 1369 (citing Mitchell v. Forsyth, 472 U.S. 511, 525 (1985)).

The Clerk is **REQUESTED** to send a copy of this Opinion & Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 16, 2017